# IN THE HAMILTON COUNTY CIRCUIT COURT.

FILED IN OFFICE
2015 AUG 31 PM 4: 15
LARRY L HENRY, CLERK
DC

ELIZABETH GENTZLER,     ]
    ]
    Plaintiff,     ]
    ]
vs.     ]     Docket No: _15 C 1031_
    ]
HAMILTON COUNTY,     ]     R# 275962
JUDGE ROB PHILYAW in his     ]
individual capacity, AND SAM     ]
MAIRS, in his individual capacity     ]
    ]
    Defendants.     ]

COMES NOW, Elizabeth Gentzler, Plaintiff, and files this complaint for damages against Hamilton County, Judge Rob Philyaw, and Sam Mairs. The Plaintiff States:

1. Elizabeth Gentzler is a resident of Hamilton County.

2. Judge Rob Philyaw is the elected Juvenile Court Judge for Hamilton County and a resident of Hamilton County.

3. Sam Mairs is Court Administrator for Hamilton County Juvenile Court and a resident of Hamilton County.

4. Jurisdiction and venue are proper in the Circuit Court of Hamilton County.

5. From August 2011 until September 1, 2014, Ms. Gentzler was a magistrate judge for Hamilton County Juvenile Court. As a magistrate judge, Ms. Gentzler reported to the Juvenile Court Judge. From August 2011 until May

**Collective Exhibit A**
**Page 1 of 52**

2013, Ms. Gentzler reported to Judge Bailey. From May 2013 until September 1, 2014, Ms. Gentzler reported to Judge Philyaw.

6. Sam Mairs was Court Administrator. In that role, Mr. Mairs was responsible for the administrative and personnel affairs of the court.

7. Ms. Gentzler is openly homosexual and everyone Ms. Gentzler worked with at the Juvenile Court was aware of her homosexuality as well as her long-term relationship with her partner.

8. Judge Philyaw and Sam Mairs discriminated against Ms. Gentzler because of her gender, sexuality, and religious beliefs by subjecting her to a hostile work environment, harassment, and choosing to not continue her employment in September 2014.

9. On a Monday, in the spring of 2013, while Ms. Gentzler was in my courtroom at the main Juvenile Court handling her afternoon docket, at around 2:00 pm, Ms. Gentzler court officer, Jimmie Cannon, and she noticed the air kicked on for the A/C, however, it was not blowing cold air. As the afternoon wore on, the warm air never kicked off, and it kept getting hotter and hotter in the courtroom. At 4:00 pm, Ms. Gentzler stepped off the bench and let Vickie Middlebrooks (a receptionist in administration who handles making phone calls when something is broken) know that the A/C was not working; that it was blowing air, but not cold air, and Ms. Gentzler asked her

to call to have someone come out. She replied that it would have to wait until the next morning because the A/C people leave at 3:00 pm.

10. On the next morning, Tuesday, Antinio Petty, one of the Legal Directors, tells Mr. Cannon to just let it run to see if it gets cooler, even though they did that on Monday and it did not work. All day Tuesday, the A/C continues to not work, and it continues to be very hot inside the courtroom.

11. On Wednesday morning the courtroom is still very hot when Ms. Gentzler starts her morning docket. Ms. Gentzler again talked to Mr. Petty about the A/C not working, and he stated it probably broke because of it being set on the "dual setting". He stated that Vickie (Middlebrooks) will be calling this morning (it was 8:30 am and Ms. Middlebrooks was not in yet). Mr. Mairs, who was sitting next to Mr. Petty when Mr. Petty said this, looked at Ms. Gentzler and stated, "We only have to provide you with a place to work – it doesn't have to be a comfortable place." Ms. Gentzler did not say anything and instead she just walk off and as she did, Mr. Mairs laughed at me.

12. At 9:10 am, Ms. Gentzler stepped off the bench to see if Ms. Middlebrooks had called about the A/C yet. Ms. Gentzler found her in the conference room reading the newspaper. Ms. Gentzler asked her if she has called someone yet to come for the A/C. She stated no, and got up from the table to go to her desk. Ms. Gentzler went back on the bench. At 11:30 am, it

was hotter yet in the courtroom, but Mr. Cannon informed Ms. Gentzler the repairmen are there to fix the A/C unit, so Ms. Gentzler stepped off the bench. She went back to administration where Ms. Middlebrooks and Mr. Petty are in the conference room eating lunch. Ms. Middlebrooks informed her that the guys were there but then left as it was lightning outside and they weren't going to get on the roof while it was lightning, so they were planning on coming back the next day.

13. At that point Mr. Mairs comes into the room and out of nowhere starts to argue with Ms. Gentzler about who called the A/C guys. He asks Ms. Gentzler who she thought could have called them. Ms. Gentzler stated that Vickie (Ms. Middlebrooks) or Antinio (Mr. Petty) could have called them. Mr. Mairs states he was the one who called them. Ms. Gentzler asked him, "When did you call them?" He stated on Friday or Thursday. Ms. Gentzler had been off on Friday, so no one had been using the courtroom, and they (Mr. Cannon and Ms. Gentzler) did not notice a problem or report it until Monday afternoon. Also, Mr. Mairs had been off that Friday as well, so Ms. Gentzler did not know why he said that he called them then. Ms. Gentzler told Mr. Mairs that he couldn't have called on Thursday or Friday because it didn't break until Monday afternoon. Mr. Mairs became agitated and stated that Ms. Gentzler could have had court somewhere else. Ms. Gentzler asked

him where, because all the courtrooms were in use. Mr. Mairs replied loudly, "For all I care you could have had court out in the parking lot." Ms. Gentzler was stunned at him saying this because she has never heard him talk to another magistrate like this.

14. In April, 2013, after Judge Philyaw had been appointed by the Hamilton County Commission, but before he was sworn in, he had asked for each of the Juvenile Court Magistrates to type something up about ourselves, so that he could get to know us better. Ms. Gentzler was already "out" at her work about being gay and that she had a partner named Jennifer, so, not wanting to lie or hide anything from her new boss, she included a little information about Jennifer in her letter to him. Ms. Gentzler does not know if he knew that she was gay before he read what she typed, or if that is when he found out.

15. On the morning of Tuesday, April 30, 2013, the day before Judge Philyaw was sworn in as Hamilton County Juvenile Court Judge, there was a Leadership Prayer Breakfast being held downtown at the Chattanooga Convention Center. This event included various speakers and a breakfast was provided as well. Judge Philyaw gave tickets to this event to both of the other Magistrates who worked with Ms. Gentzler at the main Juvenile Court, Magistrate Bruce Owens and Magistrate Troy McDougal, and invited them

to sit at his table. He never invited Ms. Gentzler to this event, and it wasn't until later that she found out that he had invited the other magistrates.The very next day, May 1, 2013, Rob Philyaw was sworn in as the next Juvenile Court Judge for Hamilton County.

16. On June 11, 2013, at one of the weekly Tuesday morning Magistrate Meetings (a meeting led by Judge Philyaw and attended by the three magistrates at the main Juvenile Court and one of the court's Legal Directors, where they discuss topics that have recently come up), Judge Philyaw announced to Ms. Gentzler and the other two magistrates who also worked at the main Juvenile Court, that in the next 30 days he was going to meet with each employee one on one. He met with the other magistrates and the Legal Director one on one, but he never met with Ms. Gentzler one on one.

17. A few months after Judge Philyaw was sworn in, he called a court-wide meeting for all the employees and appointed staff of Juvenile Court to attend. He stated to all that any ideas they had or services Juvenile Court could offer, they were welcome to share with him. Due to Ms. Gentzler's 3 and ½ years of employment with Juvenile Court up to that point (including the two years I had been on the bench) Ms. Gentzler had an idea for a service Juvenile Court could offer, and so she wanted to share it with him.

18. On the morning of Tuesday, October 29, 2013, Ms. Gentzler emailed Judge Philyaw, telling him that she had an idea regarding Juvenile Court and that she would like to share it with him. She asked if she could have a few minutes of his time. Despite being in his office all morning, he never emailed her back. She saw him later on that afternoon and he stated to her that he did get her email, but that he would meet with her tomorrow.

19. The next day, Wednesday, October 30, 2013, Judge Philyaw did not say anything to Ms. Gentzler about meeting with her, despite seeing her several times throughout the day. The next day, Thursday, October 31, 2013, Ms. Gentzler made a point to go into work extra early to try and catch him for a few minutes before the weekly Administrative staff breakfast meeting. When Judge Philyaw arrived to the office, she asked him if he would have time to meet with her that day about her idea for Juvenile Court. He said he would have time later in the morning to meet with her.

20. Ms. Gentzler finished her morning docket around 11:00 am that morning, so she asked Judge Philyaw's secretary, Laura Wimberly, if Judge Philyaw was available to meet with her. Ms. Wimberly went into Judge Philyaw's office and came back out and told her that he would meet with her in the afternoon, after her afternoon docket finished. Ms. Gentzler finished her afternoon docket at 3:30 pm and stepped off the bench to go talk to Judge Philyaw.

However, when she went back to his office, he was already gone for the day; his car was gone and his office was locked up. She stayed at the office until 5:00 pm that day, to see if he was going to come back to the office. At 4:37 pm that day, she sent him an email stating that she had been hoping to meet with him that afternoon about her idea. She explained in her email that she had talked to Mr. Locey (the supervisor of Juvenile Court's probation department) about the need for more community service options, and that her idea may provide another option for us. She said that hopefully they would be able to connect one day next week. Judge Philyaw never emailed her back, and he never spoke another word of it to.

21. On the evening of Monday, November 4, 2013, there was a reception being held by the Chattanooga Bar Association, for the Tennessee Supreme Court, in downtown Chattanooga. Ms. Gentzler informed Judge Philyaw earlier that day that her partner, Jennifer, and she were going to go the reception that evening. Jennifer came to the office around 5:15 pm, and they waited a little while in her office before they left for the reception. Judge Philyaw, Magistrate McDougal, and Ms. Brock stated they were going to go to the reception as well, and they were all still in the office when Jennifer arrived. At 6:00 pm, without saying anything to Jennifer or Ms. Gentzler, all three of them left together, and they went together in a "county car." Judge Philyaw

never offered for Jennifer and Ms. Gentzler to ride with them in the county

car, and never offered for them to take one of the several other "county cars"

that are kept at Juvenile Court. Jennifer and Ms. Gentzler ended up having

to take their own car to the event.

22. The next morning, Tuesday, November 5, 2013, during the weekly Tuesday

morning Magistrate Meeting, Judge Philyaw chastised Ms. Gentzler in front

of everyone during the meeting because he didn't understand why she

ordered some of the things in some of the cases she had recently heard. He

did not come to her first and ask her why, he just started questioning her

about why she did what she did in front of everyone at the meeting. Ms.

Gentzler tried her best to explain to him why she did what she did, even

though it was difficult given the volume of cases and time elapsed. In all the

weekly Magistrate Meetings that were held between Judge Philyaw being

sworn in and him transferring her to another court (over 30 meetings), she

was the only one Judge Philyaw ever chastised in front of the other

employees. He never chastised any of the other employees, and if he did, it

was in private, and not in front of others.

23. After the meeting was over, Ms. Gentzler went and heard all the cases on her

morning docket. When she finished her morning docket, she went to Judge

Philyaw to get clarification from him as to what he felt she wasn't doing

correctly per the meeting earlier that morning. When she explained to him a little further as to why she ruled the way she did (due to what the parties had stated to me in court), he understood. The treatment in front of the other magistrates was unnecessary.

24. On Friday, November 8, 2013, Magistrate McDougal had a colonoscopy. On the next Monday, November 11, 2013, the staff in administration and Ms. Gentzler were asking him how his procedure went on Friday. Magistrate McDougal said that apparently he had a conversation with his doctor during the procedure that he doesn't remember. Mr. Mairs interrupted and made a joke in reference to Brokeback Mountain, a recent movie about two gay men. Everyone started laughing, including Judge Philyaw, except for Ms. Gentzler. She just looked at Mr. Mairs for a few seconds without saying a word.

25. A few weeks later, on Wednesday, November 27, 2013, Ms. Gentzler was working in my office, when Mr. Mairs was walking around administration singing out loud the Christmas Carol, "Deck the Halls". When he walked past Ms. Gentzler's office door he sang out loud, "Don we now our gay apparel." And he stopped singing, stopped outside of my office door, and asked her, "Right

26. Throughout the month of December, 2013, Ms. Gentzler was increasingly being ignored and excluded by Judge Philyaw. For example, on Monday, December 9, 2013, there was a holiday event at 12:00 pm at the Hamilton County Courthouse where Judge Philyaw and Gary Behler, Chief Clerk of Hamilton County Juvenile Court, were being recognized. Ms. Gentzler finished her morning docket in time to go, but Judge Philyaw, Ms. Brock, and another appointed staff member who worked in administration had already left, so Ms. Gentzler had Jimmie Cannon, my court officer, drive her to the County Courthouse. Judge Philyaw never spoke a word to me while we were at the event, however, when the event was over the entire group (Ms. Gentzler, Judge Philyaw, and the other appointed employees) all walked out of the building together to leave. Judge Philyaw and the other appointed staff got back in the "county car" that they had come in, and Ms. Gentzler had to find a ride back to Juvenile Court (Judge Philyaw never offered to let her ride back with them). Ms. Gentzler got back to Juvenile Court around 12:30pm but Judge Philyaw and the other appointed staff had not made it back yet. They got back around 1:15pm, and she learned at that time that Judge Philyaw taken all of them out for lunch. Ms. Gentzler was the only one in administration who went to the program who Judge Philyaw did not include in the lunch outing.

**Collective Exhibit A**
**Page 11 of 52**

27. On Monday, December 30, 2013, after Ms. Gentzler had finished her afternoon docket, she was sitting in my office when Judge Philyaw came into my office and shut the door. He sat down and proceeded to tell me that he was transferring me to be a magistrate at Child Support Court.

28. Child Support Court is another division of Hamilton County Juvenile Court, which is located in another building a few miles away from the main Juvenile Court building.

29. Judge Philyaw only allows the magistrates at the main Juvenile Court to attend the bi-annual Tennessee Judicial Conferences for Juvenile Court Judges. The magistrates at Child Support Court have to find other ways to obtain their CLE. Judge Philyaw never gave a reason why he was transferring Ms. Gentzler.

30. Before Ms. Gentzler was transferred, there were three magistrates at the main Juvenile Court, two white, married males and Ms. Gentzler, a white, gay female (in addition to Judge Philyaw, who is a white, married male), and there were three magistrates at Child Support Court, two women, one white, one African American, and one white, married male).

31. Judge Philyaw explained that he was going to swap Ms. Gentzler and Magistrate Gott, the one white, married male at Child Support Court, and bring him over to the main Juvenile Court. This in effect would create all

female magistrates at Child Support Court and all white, married males at the main division of Juvenile Court.

32. Ms. Gentzler asked Judge Philyaw if he was sure he wanted the public image of all three magistrates handling the child support cases to be females. He said he was aware of the public image, and also the public image the swap would create by now having all white males at the main Juvenile Court. He went on to state that the image it portrayed didn't bother him, because he was confident he was going to win the election.

33. A few days later, Ms. Gentzler was talking to Judge Philyaw about the timeframe for the transfer to take place and Judge Philyaw confirmed that although Ms. Gentzler had already been registered for the Judicial Conference coming up at the end of February, 2014, and a hotel room had been reserved in her name, Ms. Gentzler would not be going and that Magistrate Gott would be going in my place. Judge Philyaw said Ms. Gentzler could attend whatever other seminars she wanted to in order to get my required CLE, however, my mileage and lodging would not be paid for out of the budget and that she would have to cover those herself.

34. In this same conversation, Judge Philyaw stated to Ms. Gentzler that he realized she may be in the middle of some big trials and that because he was transferring her in the middle of them, he informed her that it would be fine

if she needed to come back over to the main Juvenile Court to conclude them.

35. At the end of January, 2014, Magistrate Gott and Ms. Gentzler switched offices and began hearing cases in our new buildings. A few months later, in April, 2014, Ms. Gentzler met with a local attorney, Misty Harris, after work. She was the Magistrate who left before Ms. Gentzler, and whose place Ms. Gentzler took when she was appointed to the bench by Judge Bailey. She and Ms. Gentzler would periodically get together to talk about things concerning being a magistrate at Juvenile Court.

36. In April, 2014, she and Ms. Gentzler were talking about how Judge Philyaw had transferred Ms. Gentzler to Child Support Court. Ms. Harris informed Ms. Gentzler that Mr. Mairs, the Court Administrator for Hamilton County Juvenile Court, had told her that the reason Judge Philyaw transferred Ms. Gentzler to Child Support Court, was because Judge Philyaw was uncomfortable around me, because she is gay.

37. There was a day in January, 2014, where Ms. Gentzler was sitting in my office, still at the main Juvenile Court, when Judge Philyaw began going around to all the offices back in administration (this includes the three Magistrates' offices, a Legal Director's office, and Mr. Mairs' office).

38. Ms. Gentzler heard Judge Philyaw stop outside of each office and talk to each person in their office about a program that was coming to Chattanooga in March, 2014, called Prison Prevention Ministries. The group was going to be putting on a presentation at the Chattanooga Convention Center on the evening of March 20, 2014, and Judge Philyaw was asking each person if they would like to attend the event with him.

39. Ms. Gentzler sat in her office and waited for Judge Philyaw to come around to my office, however, when he got to my office, he just kept walking past it. He never spoke a word to Ms. Gentzler about the presentation, nor about attending it with him. Later on that week, Magistrate Gott, who at the time was still a magistrate at Child Support Court, informed me that he got an email from Judge Philyaw inviting him to attend this same presentation.

40. In March, 2014, (now working as a magistrate at Child Support Court) Ms. Gentzler spoke with the other two magistrates at Child Support Court about the presentation, as it was coming up, and they both informed me that they had received emails from Judge Philyaw inviting them to the presentation. Ms. Gentzler was the only one of Judge Philyaw's magistrates, who he did not invite to this event.

41. In January, 2014, a few days after Ms. Gentzler was informed that she was being transferred to Child Support Court, she looked at all the cases that

were already docketed for her to hear at the main Juvenile Court, to see which ones she was in the middle of hearing testimony on. As explained above, Judge Philyaw had told her that if she needed to come back to the main Juvenile Court to finish hearing cases she was in the middle of, that she could do so.

42. There were three big trials that she was currently in the middle of hearing, and they had previously been set on the docket for more testimony to be heard on in March, 2014. So once it became public knowledge that Judge Philyaw was transferring her, she contacted the caseworkers in the Dependency and Neglect Department of Juvenile Court who were assigned to each of the three cases, and asked them to contact the attorneys on each case, to see if the attorneys wanted me to stay on the case, or have the magistrate who was coming over to take my place hear the rest of the trial. If the attorneys did want me to stay on to finish the trial, then she gave new court dates for each of the three cases, as the current court dates would conflict with the days she was now going to be hearing cases over at Child Support Court.

43. The caseworkers got back with her and stated that the attorneys on all three cases wanted her to finish hearing the proof in their trials, and that the new dates she had picked for the cases worked fine for the attorneys.

44. Each magistrate was assigned a Friday off each month. When Ms. Gentzler was a magistrate at the main Juvenile Court, her Friday off was always the fourth Friday of each month. Magistrate Gott who was taking Ms. Gentzler's place would have the same Friday off (the 4th one) as the other Fridays were already assigned to the other magistrates. So, the dates Ms. Gentzler picked to hear these last three trials on, were all on the fourth Friday of the month, as she knew Magistrate Gott would be off that day, and so there would be an available courtroom for the trial. She also set all three cases in the afternoon, as she had a docket at Child Support Court on Friday mornings, but not on Friday afternoons. The caseworkers entered the new court dates into the Juvenile Court computer system (JFACTS), and also put in the system that she would be the magistrate hearing the case. She sent emails regarding the cases she would be keeping, and when they were set, to on Gordon, the supervisor of the Dependency and Neglect Department, who scheduled a caseworker for each courtroom, to Linda Lafleur, the clerk who scheduled a clerk for each courtroom, and to Ms. Brock, the Legal Director. She also wrote in her docket book (soon going to be Magistrate Gott's docket book) the case name, when it was set on the docket, and she wrote her name next to the case name and circled my name, so Magistrate Gott

**Collective Exhibit A**
**Page 17 of 52**

would see it and know that she was hearing the case and not think he was having to come in on his Friday off to hear the case.

45. Magistrate Gott had also informed Ms. Gentzler that he was going to have to come back to Child Support Court to finish up some trials he was in the middle of over there as well. Magistrate Gott and Ms. Gentzler moved offices at the end of January, 2014, and Ms. Gentzler begin hearing cases at Child Support Court on February 3, 2014. In early February, 2014, Magistrate Gott and Ms. Gentzler talked on the phone, and she read off to him the three cases that she was having to come over and hear at the main Juvenile Court, in case he hasn't seen the case names she wrote in his docket book.

46. The first case was set to be heard on March 28, 2014 at 1:30 pm. On March 17, 2014, Ms. Gentzler emailed Ms. Brock, to let her know about the upcoming dates and times she would be at the main Juvenile Court. On March 25, 2014, Ms. Gentzler emailed Mr. Gordon and Ms. Lafleur, to remind them of the upcoming trial, to make sure they had a caseworker and a clerk scheduled to be in the courtroom. They both replied to her email, so she knew that they had received it.

47. At the end of the day on Thursday, March 27, 2014, when Ms. Gentzler finished her docket at Child Support Court, the clerks over at Child Support

Court were all confused and scrambling, because they had just found out that Magistrate Gott had previously scheduled some cases at Child Support Court for the next morning, and they were not aware of that until just then (the day before) and they were having to make sure a courtroom would be available and that a clerk would be available for in the courtroom.

48. The State Attorneys were also not aware until then that Magistrate Gott had cases set for in the morning at Child Support Court, so they were scrambling to make sure an attorney would be available to handle his docket.

49. At 4:00 pm on Thursday, March 27, 2014, the administrator at Child Support Court, Theresa Gravitt, called Magistrate Gott and confirmed that he did have cases set at Child Support Court the next morning, he also informed her and then she informed me, that he also had set a case at the main Juvenile Court for the next day (the 28th), in the afternoon. This day was supposed to be his Friday off, but since he was already having to come to hear cases in the morning at Child Support Court, he figured he would go ahead and set something for the afternoon at the main Juvenile Court. The next morning (March 28, 2014), Ms. Gentzler heard my normally scheduled docket at Child Support Court, and saw Magistrate Gott over there to hear the cases he had specially set.

50. Ms. Gentzler talked to him about whether there would be an available courtroom at the main Juvenile Court, as they both had a case set over at the main Juvenile Court for that afternoon. Magistrate Gott said that there would be an available courtroom, because Magistrate Owens' has his office time scheduled for Friday afternoons, so one of them could use his courtroom, and the other could use Magistrate Gott's courtroom.

51. After lunch, Ms. Gentzler went to the main Juvenile Court to hear her trial. She go into one of the available courtrooms and there was a caseworker, a clerk, and a court officer ready to get started. By around 5:15 pm, they still had six more witnesses to go, so the attorneys asked for Ms. Gentzler to set the case for another court date to finish, and she set the case for the afternoon of June 27, 2014, again a fourth Friday, and June 27th was the first available fourth Friday that worked with both attorney's schedules.

52. Ms. Gentzler's court officer walked her back to administration so she could collect her coat and keys out of Magistrate Gott's office. Magistrate Gott was in his office at the time.

53. When Ms. Gentzler got to the office door to go in, Judge Philyaw stopped her. Another Magistrate, Magistrate McDougal, was standing next to Judge Philyaw and Ms. Gentzler's court officer, Tim Sykes, was standing next to Ms. Gentzler. Judge Philyaw asked if she had finished the trial, and she

replied that unfortunately she had not as there were still six more witnesses and that we were having to come back one more day to finish. At this point, Mr. Sykes spoke up and confirmed to Judge Philyaw that she did her best in trying to finish the trial that day, and that she, "laid down the law with the attorneys, in that they must finish at the next court date".

54. Judge Philyaw looked at Ms. Gentzler and said, "Well, maybe next time you can give notice so that there won't be a problem with coverage."

55. Ms. Gentzler looked at Judge Philyaw puzzled, because she had no idea there was a problem with coverage. Neither the caseworker, the clerk, nor the court officer had said anything to her about it.

56. She asked, "There was a problem with coverage?" Judge Philyaw said, "Yeah, the clerks were scrambling trying to get coverage for the courtrooms." She replied with all the measures she had taken to ensure there was adequate coverage.

57. Magistrate Gott, who is still sitting in his office, then speaks up and says, "Actually, that is probably my fault. I set a case on for this afternoon." Upon hearing this Judge Philyaw walks away and doesn't say anything else

58. The next Monday morning, March 31, 2014, Ms. Gentzler forwarded to Judge Philyaw all the emails she had sent to Ms. Lefleur, Mr. Gordon, and Ms. Brock, informing them and reminding them of the trials she still had

**Collective Exhibit A**
**Page 21 of 52**

court dates for at the main Juvenile Court. Judge Philyaw replied by email for Ms. Gentzler to make sure Magistrate Gott is aware of when she has cases set at the main Juvenile Court. She replied by email that she would make sure Magistrate Gott was informed of any court dates she was going to hear cases at the main Juvenile Court, however, she also informed Judge Philyaw that the case names and court dates had all been previously entered into JFACTS, that she had also written the information into Magistrate Gott's docket book, so he would see it, and that she had informed Magistrate Gott by telephone in February of the three cases she had pending at the main Juvenile Court

59. Ms. Gentzler began hearing cases at Child Support Court on February 3, 2014. However, as stated above, she was in the middle of some big trials when Judge Philyaw transferred me, so she was still having to go back to the main Juvenile Court building to finish hearing those cases. On June 12, 2014, Mr. Mairs called her on the telephone and asked if Friday, June 27 was her last day of coming over to the main Juvenile Court to hear cases. Ms. Gentzler informed him at that time that the trial on her last case should conclude on that day.

60. On the afternoon of Friday, June 20, 2014, Ms. Gentzler went back to the main Juvenile Court for a worker's retirement party. She had her court

officer, Jimmie Cannon, drive her from Child Support Court to the main Juvenile Court building, and another court officer, Reginald Page, was in the car as well. Mr. Cannon pulled up to the gate that leads to the parking area for administration, and Ms. Gentzler gave him her code to put in to open the gate. The gate would not open. Ms. Gentzler's code had been removed, even though she was still having to go to the main Juvenile Court to finish the trials.

61. Ms. Gentzler later sent an email to Judge Philyaw about my gate code being taken out, and he did not address the issue, and just replied by email that she was to talk to Mr. Mairs about this and other issues she had raised in her email. In her meeting with Mr. Mairs, he informed me that the gate only holds so many codes and that he needed to take hers out

62. The gate at Child Support Court holds over 250 codes and it is the same system as at the main Juvenile Court.

63. There are only approximately 50 people who park behind the gate at the main Juvenile Court

64. On Wednesday, June 25, 2014, there was a Motion scheduled to be heard in a case Ms. Gentzler was still hearing in a trial at the main Juvenile Court. The Motion was set for 8:30 am that morning.

65. Ms. Gentzler arrived at 8:20 am and went to her old office, now occupied by Magistrate Gott. Magistrate Gott was not yet in the office, so she sat down.

66. Within a minute of sitting down, Mr. Mairs comes into the office and starts talking to Ms. Gentzler in a curt tone and asks, "This is your last week over here, right? This is the last week you are coming over here, right?"

67. Ms. Gentzler asked Mr. Mairs to have a seat so she could explain to him what was happening in the trial. She pointed to a chair in the office. She started to get up to move her robe that she had placed on the chair, but Mr. Mairs stated, "No, that is not necessary." He went on to state in the same curt tone, "Remember, we talked about this the other week." Ms. Gentzler assumed he was referring to the phone call he had made to her on June 12, asking her when she was going to be done hearing cases at the main Juvenile Court. However, the attorney's father had just died, and she needed to explain this to him, but he would not listen.

68. She asked Mr. Mairs why this needed to be her last week coming over here. He stated, curtly, "Because this has gone on long enough." Ms. Gentzler said to him that Magistrate Gott has a child support case set in November (at his former building), and she asked Mr. Mairs, "So why are you coming down on me?" He stated, "I will get with Gott on that." Then he continued, "You coming over here is just causing problems. You need to wrap your

**Collective Exhibit A**
**Page 24 of 52**

cases up." Mr. Mairs then stated, "You don't keep anyone informed as to when you have to come over here and it is confusing for the clerks." She replied to him, "When I get back to my office, I will forward you every single email I have sent to the clerks since January". She continued, "So if the clerks are confused, it is not because of me."

69. Ms. Gentzler went to extraordinary lengths to email all clerks and administrators whenever she needed to be at the Juvenile Court's main building.

70. Mr. Mairs then stated to Ms. Gentzler, "You need to stop coming over here and end your cases. How much longer is this going to be?" She replied, "The attorneys have specifically requested that I stay on this case, so what do you want me to do?" Mr. Mairs didn't answer, and instead he just walked away.

71. A few minutes later, Magistrate Gott walked in, unaware of the conversation Mr. Mairs and I just had. Magistrate Gott informed me that he would be going to Child Support Court that coming Friday morning to finish some trials, and he asked Ms. Gentzler if Christy Cooper, the Chief Deputy Clerk at Child Support Court knew he was coming over so he would have a clerk in the courtroom, as he had not informed her about him coming over this Friday. Ms. Gentzler told him she was not sure if she knew or not. He said

he would need to get with her soon to make sure she was aware that a clerk needed to be in a courtroom for him

72. On, June 25, 2014, just a few minutes after speaking with Magistrate Gott, Ms. Gentzler took the bench to hear the Motion. However, the caseworker needed a minute to get everything together, so she stepped off the bench to find Judge Philyaw and speak with him about what had just happened with Mr. Mairs. When she got back to Judge Philyaw's office, his door was partly closed, so she asked his secretary, Laura Wimberly, if she could speak with Judge Philyaw. She said that someone was in with him right now. She could see through the crack in the door that it was Mr. Mairs, so she said she would come back after the Motion.

73. Ms. Gentzler finished hearing the Motion at 8:50 and went back to Administration, where Judge Philyaw's office (and the Magistrates offices) are located. Ms. Wimberly stopped her before she made it to Judge Philyaw's office, and told her that Judge Philyaw told her to tell Ms. Gentzler that he would need to get meet later because he had to finish his docket and he was leaving early.

74. Ms. Gentzler composed an email to Judge Philyaw, explaining to him what had transpired this morning with Mr. Mairs, and how hostile Mr. Mairs was to her. She also included in the email earlier incidents that had occurred

**Collective Exhibit A**
**Page 26 of 52**

where she felt she was not being treated fairly, either by him (Judge Philyaw), or by Mr. Mairs.

75. While composing the email, Judge Philyaw sent an email to all the magistrates, stating that Mr. Mairs "should be privy to anything that effects the operation of the court."

76. Ms. Gentzler finally got a reply from Judge Philyaw the next day, albeit a short reply. All it said was that he "received my note and that Sam (Mr. Mairs) will follow up to talk through the issues involved".

77. Ms. Gentzler contacted Hamilton County Human Resources, because her supervisor, Judge Philyaw, refused to meet with her, or discuss any of these issues with her.

78. After hearing only a few details of the situation, Human Resources told Ms. Gentzler to call Ken Jordan, the EEO officer for Hamilton County employees. Ms. Gentzler called Mr. Jordan and set up a meeting for just the two of them. At the meeting she explained to him what has transpired, but that she was scared to file a complaint because she was scared of being let go by Judge Philyaw.

79. Mr. Jordan advised Ms. Gentzler to attend the meeting with Mr. Mairs, and then if anything negative happens after that, to let him know.

80. Ms. Gentzler set up a meeting with Mr. Mairs, as directed by her supervisor, Judge Philyaw. She sent an email to Judge Philyaw to let him know Mr. Mairs and she had scheduled a meeting but that she was a little nervous about having to meet with Mr. Mairs, because of the harassment she had received from Mr. Mairs.

81. Judge Philyaw never replied.

82. When Ms. Gentzler walked in to Mr. Mairs' office for our meeting she immediately saw on his desk a copy of the email she sent to Judge Philyaw on the morning of June 25, 2014, informing him how Mr. Mairs had acted towards her that morning and some of the other concerns she had.

83. Judge Philyaw was the only person I had sent the email to.

84. Mr. Mairs went line by line through the email she sent to Judge Philyaw, grilling her to explain why she wrote what she wrote in the email.

85. On Sunday, July 13, 2014, Ms. Gentzler's partner, Jennifer Gentzler, was on Facebook. She is "friends" on Facebook with Rachel Brock, one of the Legal Directors for Hamilton County Juvenile Court. On that date, Ms. Brock had posted a picture on her own Facebook page, showing Judge Philyaw, all the magistrates from the main Juvenile Court, Ms. Brock, Antinio Petty, the other Legal Director for Hamilton County Juvenile Court, and the two secrectaries from administration at the main Juvenile Court, at a

Chattanooga Lookouts baseball game (Chattanooga's minor league baseball team).

86. The picture was from that weekend, and some of the people in the picture were wearing "Rob Philyaw for Judge" t-shirts (as the election was taking place in less than a month). Judge Philyaw never invited Ms. Gentzler to this event, yet he invited the other magistrates, legal directors, and secretaries from administration, as they were all there sitting with him in the stands

87. The election for Hamilton County Juvenile Court Judge was held on Thursday, August 7, 2014. Judge Philyaw invited all the magistrates and the other appointed staff in administration at Juvenile Court, except for Ms. Gentzler, to celebrate with him that evening at the Hamilton County Republican Headquarters.

88. That evening, Ms. Gentzler's partner, Jennifer, saw on Facebook where a picture had been posted on Facebook showing Judge Philyaw and others celebrating at the Hamilton County Republican Headquarters. Ms. Brock was tagged in the picture because she was the one who took the picture.

89. On Friday, August 15, 2014, at 4:00 pm, Ms. Gentzler was sitting in her office at Child Support Court, when Judge Philyaw called her on the telephone. He said he would not reappoint her to a magistrate position.

90. When Ms. Gentzler asked him why, he said he did not have to give a reason.

91. Ms. Gentzler's last official day was Tuesday, September 2, 2014. Two weeks prior to that day, she called Hamilton County Human Resources to find out when she would receive my separation paperwork, as I would be applying for Unemployment. Sharon Ellis with HR informed me that they would mail to me my separation paperwork on my last day (September 2, 2014). However, by Monday, September 8, 2014, I had not received my separation paperwork in the mail. So on that day I called HR and Ms. Ellis stated my paperwork had been mailed out Thursday, September 4, 2014. She stated I should be receiving it either that day (Monday) or the next day (Tuesday, September 9). My separation paperwork finally arrived in the mail on Tuesday, September 9, 2014. The postmark on the address shows that it was not mailed out until Monday, September 8, 2014. The paperwork does not state a reason for my termination, just that I was terminated.

92. Ms. Gentzler filed a complaint with the EEOC in December 2014. The EEOC is currently investigating her charge of discrimination.

93. The Hamilton County Personnel Handbook, which governs all Hamilton County employees, prohibits discrimination on the basis of gender and religion.

## CAUSES OF ACTION

## STATE LAW CLAIMS

I.      Breach of Contract

94. Ms. Gentzler was an employee of Hamilton County.

95. Ms. Gentzler was operating pursuant to a contract with Hamilton which included the Employee Handbook.

96. The Employee Handbook prohibited harassment and discrimination on the basis of gender and religion.

97. Judge Philyaw and Sam Mairs were agents of Hamilton County due to their management and supervisory roles in the Juvenile Court.

98. Judge Philyaw discriminated against Ms. Gentzler when he continually excluded her from outside events.

99. Judge Philyaw discriminated against Ms. Gentzler when he ignored her complaints about Mr. Mairs.

100.    Judge Philyaw discriminated against Ms. Gentzler when he moved her from the her position at Juvenile Court to Child Support Court.

101.    Mr. Mairs discriminated against Ms. Gentzler when he made sexist and homophobic remarks around her.

102.    Mr. Mairs discriminated against Ms. Gentzler when he removed her access to the Juvenile Court parking lot.

103.     Judge Philyaw and Mr. Mairs discriminated against Ms. Gentzler when they treated her more harshly than all other employees.

104.     The discrimination by Judge Philyaw and Mr. Mairs was continuous for a period of over a year.

105.     The discrimination by Judge Philyaw and Mr. Mairs caused a great deal of emotional and phsychological harm to Ms. Gentzler.

106.     The discrimination by Judge Philyaw and Mr. Mairs constitutes harassment and a hostile work environment as defined by the Employee Handbook.

107.     The Discrimination by Judge Philyaw and Mr. Mairs was based on Ms. Gentzler's gender and religion.

108.     Ms. Gentzler attempted to cure the harassment and discrimination by approaching Judge Philyaw, Mr. Mairs, Human Resources and the EEO office of Hamilton County.

109.     No administrator, employee or office attempted to help Ms. Gentzler cure her situation.

110.     Thus, the discrimination by Judge Philyaw and Mr. Mairs was a breach of the employment contract between Hamilton County and Ms. Gentzler.

**Collective Exhibit A**
**Page 32 of 52**

111.     Ms. Gentzler is entitled to damages resulting from the breach of contract including special damages caused by the discrimination and harassment.

## II.     Tennessee Human Rights Act

112.     Ms. Gentzler was an employee of Hamilton County.

113.     Ms. Gentzler was operating pursuant to a contract with Hamilton which included the Employee Handbook.

114.     The Employee Handbook prohibited harassment and discrimination on the basis of gender and religion.

115.     Judge Philyaw and Sam Mairs were agents of Hamilton County due to their management and supervisory roles in the Juvenile Court.

116.     Judge Philyaw discriminated against Ms. Gentzler when he continually excluded her from outside events.

117.     Judge Philyaw discriminated against Ms. Gentzler when he ignored her complaints about Mr. Mairs.

118.     Judge Philyaw discriminated against Ms. Gentzler when he moved her from the her position at Juvenile Court to Child Support Court.

119.     Mr. Mairs discriminated against Ms. Gentzler when he made sexist and homophobic remarks around her.

120.    Mr. Mairs discriminated against Ms. Gentzler when he removed her access to the Juvenile Court parking lot.

121.    Judge Philyaw and Mr. Mairs discriminated against Ms. Gentzler when they treated her more harshly than all other employees.

122.    The discrimination by Judge Philyaw and Mr. Mairs was continuous for a period of over a year.

123.    The discrimination by Judge Philyaw and Mr. Mairs caused a great deal of emotional and phsychological harm to Ms. Gentzler.

124.    The discrimination by Judge Philyaw and Mr. Mairs constitutes harassment and a hostile work environment as defined by the Employee Handbook.

125.    The Discrimination by Judge Philyaw and Mr. Mairs was based on Ms. Gentzler's gender and religion.

126.    Ms. Gentzler attempted to cure the harassment and discrimination by approaching Judge Philyaw, Mr. Mairs, Human Resources and the EEO office of Hamilton County.

127.    No administrator, employee or office attempted to help Ms. Gentzler cure her situation.

128.    Thus, the discrimination by Judge Philyaw and Mr. Mairs was a

violation of the Tennessee Human Rights act by Hamilton County, Judge

Philyaw and Mr. Mairs.


## FEDERAL LAW CLAIMS

I.    Hostile Work Environment based on Gender

129.    Ms. Gentzler was an employee of Hamilton County.

130.    Judge Philyaw and Sam Mairs were employees of Hamilton County

and had management and supervisory roles in the Juvenile Court.

131.    Judge Philyaw discriminated against Ms. Gentzler when he

continually excluded her from outside events.

132.    Judge Philyaw discriminated against Ms. Gentzler when he ignored

her complaints about Mr. Mairs.

133.    Judge Philyaw discriminated against Ms. Gentzler when he moved her

from the her position at Juvenile Court to Child Support Court.

134.    Mr. Mairs discriminated against Ms. Gentzler when he made sexist

and homophobic remarks around her.

135.    Mr. Mairs discriminated against Ms. Gentzler when he removed her

access to the Juvenile Court parking lot.

136.    Judge Philyaw and Mr. Mairs discriminated against Ms. Gentzler when they treated her more harshly than all other employees.

137.    The discrimination by Judge Philyaw and Mr. Mairs was continuous for a period of over a year.

138.    The discrimination by Judge Philyaw and Mr. Mairs caused a great deal of emotional and phsychological harm to Ms. Gentzler.

139.    The discrimination by Judge Philyaw and Mr. Mairs constitutes harassment and a hostile work environment as defined by the Employee Handbook.

140.    The Discrimination by Judge Philyaw and Mr. Mairs was based on Ms. Gentzler's gender.

141.    Ms. Gentzler attempted to cure the harassment and discrimination by approaching Judge Philyaw, Mr. Mairs, Human Resources and the EEO office of Hamilton County.

142.    No administrator, employee or office attempted to help Ms. Gentzler cure her situation.

143.    Thus, the discrimination by Judge Philyaw and Mr. Mairs was unlawful harassment and subjected Ms. Gentzler to a hostile work environment on the basis of her gender prohibited by Title VII of the Civil Rights Act.

**Collective Exhibit A**
**Page 36 of 52**

## II.    Hostile Work Environment based on Religion

144.    Ms. Gentzler was an employee of Hamilton County.

145.    Judge Philyaw and Sam Mairs were employees of Hamilton County and had management and supervisory roles in the Juvenile Court.

146.    Judge Philyaw discriminated against Ms. Gentzler when he continually excluded her from outside events.

147.    Judge Philyaw discriminated against Ms. Gentzler when he ignored her complaints about Mr. Mairs.

148.    Judge Philyaw discriminated against Ms. Gentzler when he moved her from the her position at Juvenile Court to Child Support Court.

149.    Mr. Mairs discriminated against Ms. Gentzler when he made sexist and homophobic remarks around her.

150.    Mr. Mairs discriminated against Ms. Gentzler when he removed her access to the Juvenile Court parking lot.

151.    Judge Philyaw and Mr. Mairs discriminated against Ms. Gentzler when they treated her more harshly than all other employees.

152.    The discrimination by Judge Philyaw and Mr. Mairs was continuous for a period of over a year.

**Collective Exhibit A**
**Page 37 of 52**

153.     The discrimination by Judge Philyaw and Mr. Mairs caused a great deal of emotional and phsychological harm to Ms. Gentzler.

154.     The discrimination by Judge Philyaw and Mr. Mairs constitutes harassment and a hostile work environment as defined by the Employee Handbook.

155.     The Discrimination by Judge Philyaw and Mr. Mairs was based on Ms. Gentzler's religion.

156.     Ms. Gentzler attempted to cure the harassment and discrimination by approaching Judge Philyaw, Mr. Mairs, Human Resources and the EEO office of Hamilton County.

157.     No administrator, employee or office attempted to help Ms. Gentzler cure her situation.

158.     Thus, the discrimination by Judge Philyaw and Mr. Mairs was unlawful harassment and subjected Ms. Gentzler to a hostile work environment on the basis of religion prohibited by Title VII of the Civil Rights Act.

III.     Hostile Work Environment based on Sexuality

159.     Ms. Gentzler was an employee of Hamilton County.

160.     Judge Philyaw and Sam Mairs were employees of Hamilton County and had management and supervisory roles in the Juvenile Court.

161.     Judge Philyaw discriminated against Ms. Gentzler when he continually excluded her from outside events.

162.     Judge Philyaw discriminated against Ms. Gentzler when he ignored her complaints about Mr. Mairs.

163.     Judge Philyaw discriminated against Ms. Gentzler when he moved her from the her position at Juvenile Court to Child Support Court.

164.     Mr. Mairs discriminated against Ms. Gentzler when he made sexist and homophobic remarks around her.

165.     Mr. Mairs discriminated against Ms. Gentzler when he removed her access to the Juvenile Court parking lot.

166.     Judge Philyaw and Mr. Mairs discriminated against Ms. Gentzler when they treated her more harshly than all other employees.

167.     The discrimination by Judge Philyaw and Mr. Mairs was continuous for a period of over a year.

168.     The discrimination by Judge Philyaw and Mr. Mairs caused a great deal of emotional and phsychological harm to Ms. Gentzler.

169.     The discrimination by Judge Philyaw and Mr. Mairs constitutes harassment and a hostile work environment as defined by the Employee Handbook.

170. The Discrimination by Judge Philyaw and Mr. Mairs was based on Ms. Gentzler's religion.

171. Ms. Gentzler attempted to cure the harassment and discrimination by approaching Judge Philyaw, Mr. Mairs, Human Resources and the EEO office of Hamilton County.

172. No administrator, employee or office attempted to help Ms. Gentzler cure her situation.

173. Thus, the discrimination by Judge Philyaw and Mr. Mairs was unlawful harassment and subjected Ms. Gentzler to a hostile work environment on the basis of sexuality prohibited by Title VII of the Civil Rights Act.

IV. Termination based on Gender

174. Ms. Gentzler is a female and is a member of a protected class.

175. Judge Philyaw knew of Ms. Gentzler's membership in a protected class.

176. Judge Philyaw terminated Ms. Gentzler's employment based on her membership in a protected class.

177. Thus, Judge Philyaw violated Title VII of the Civil Rights Act when he terminated Ms. Gentzler's employment.

## V. Termination based on Religion

178.     Ms. Gentzler has different religious views than Judge Philyaw and is thus a member of a protected class.

179.     Judge Philyaw knew of Ms. Gentzler's membership in a protected class.

180.     Judge Philyaw terminated Ms. Gentzler's employment based on her membership in a protected class.

181.     Thus, Judge Philyaw violated Title VII of the Civil Rights Act when he terminated Ms. Gentzler's employment.

## V.     Termination based on Sexuality

182.     Ms. Gentzler is homosexual and is thus a member of a protected class.

183.     Judge Philyaw knew of Ms. Gentzler's membership in a protected class.

184.     Judge Philyaw terminated Ms. Gentzler's employment based on her membership in a protected class.

185.     Alternatively, Judge Philyaw terminated Ms. Genztler because she did not conform to gender roles because she was in a relationship with a woman.

186.     Thus, Judge Philyaw violated Title VII of the Civil Rights Act when he terminated Ms. Gentzler's employment.

## VI. 42 U.S.C. 1983 Violation of 14th Amendment right to Equal Protection on Gender

187.     Ms. Gentzler is granted the right of equal protection under the law by the Fourteenth Amendment of the Constitution.

188.     The Fourteenth Amendment protects government employees from actions by their employers which violate the Equal Protection Clause.

189.     Ms. Gentzler was denied her right of equal protection by Judge Philyaw, Mr. Mairs and Hamilton County because of her gender.

190.     Judge Philyaw denied her right of equal protection when he continually excluded her from outside events.

191.     Judge Philyaw denied her right of equal protection when he ignored her complaints about Mr. Mairs.

192.     Judge Philyaw denied her right of equal protection when he moved her from the her position at Juvenile Court to Child Support Court.

193.     Mr. Mairs denied her right of equal protection when he made sexist and homophobic remarks around her.

194.     Mr. Mairs denied her right of equal protection when he removed her access to the Juvenile Court parking lot.

195.     Judge Philyaw and Mr. Mairs denied her right of equal protection when they treated her more harshly than all other employees.

196.     The denial of her right of equal protection by Judge Philyaw and Mr. Mairs caused a great deal of emotional and psychological harm to Ms. Gentzler.

## VII. 42. U.S.C. 1983 Violation of 14th Amendment right to Equal Protection on Religion

197.     Ms. Gentzler is granted the right of equal protection under the law by the Fourteenth Amendment of the Constitution.

198.     The Fourteenth Amendment protects government employees from actions by their employers which violate the Equal Protection Clause.

199.     Ms. Gentzler was denied her right of equal protection by Judge Philyaw, Mr. Mairs and Hamilton County because of her religious beliefs.

200.     Judge Philyaw denied her right of equal protection when he continually excluded her from outside events.

201.     Judge Philyaw denied her right of equal protection when he ignored her complaints about Mr. Mairs.

202.     Judge Philyaw denied her right of equal protection when he moved her from the her position at Juvenile Court to Child Support Court.

203.     Mr. Mairs denied her right of equal protection when he made sexist and homophobic remarks around her.

204.     Mr. Mairs denied her right of equal protection when he removed her access to the Juvenile Court parking lot.

205.    Judge Philyaw and Mr. Mairs denied her right of equal protection when they treated her more harshly than all other employees.

206.    The denial of her right of equal protection by Judge Philyaw and Mr. Mairs caused a great deal of emotional and psychological harm to Ms. Gentzler.

## VII. 42 U.S.C. 1983 Violation of 14th Amendment right to Equal Protection on Sexuality

207.    Ms. Gentzler is granted the right of equal protection under the law by the Fourteenth Amendment of the Constitution.

208.    The Fourteenth Amendment protects government employees from actions by their employers which violate the Equal Protection Clause.

209.    Ms. Gentzler was denied her right of equal protection by Judge Philyaw, Mr. Mairs and Hamilton County because of her sexuality.

210.    Judge Philyaw denied her right of equal protection when he continually excluded her from outside events.

211.    Judge Philyaw denied her right of equal protection when he ignored her complaints about Mr. Mairs.

212.    Judge Philyaw denied her right of equal protection when he moved her from the her position at Juvenile Court to Child Support Court.

213.    Mr. Mairs denied her right of equal protection when he made sexist and homophobic remarks around her.

214.     Mr. Mairs denied her right of equal protection when he removed her access to the Juvenile Court parking lot.

215.     Judge Philyaw and Mr. Mairs denied her right of equal protection when they treated her more harshly than all other employees.

216.     The denial of her right of equal protection by Judge Philyaw and Mr. Mairs caused a great deal of emotional and psychological harm to Ms. Gentzler.

WHEREFORE, The plaintiff prays that process be issues, that a jury be empaneled, that a judgment be entered against the defendants and they be ordered to pay general damages of $500,000, attorneys fees, and any other remedies the court deem just.

Respectfully submitted,

**JAMES, JAMES & JOYNER**

STUART F. JAMES, BPR# 013841
WILLIAM T. "BILLY" JOYNER, BPR# 033378
Attorneys - Plaintiff
735 Broad Street, Suite 908
Chattanooga, TN 37402
(423) 756-3646
sj@jamesjamesjoyner.com
wtj@jamesjamesjoyner.com

# IN THE CIRCUIT COURT OF HAMILTON COUNTY, TENNESSEE

ELIZABETH GENTZLER,                    ]
                                       ]
          Plaintiff,                   ]
                                       ]
vs.                                    ]          Docket No: 15C1031
                                       ]
HAMILTON COUNTY,                       ]
JUDGE ROB PHILYAW in his               ]
individual capacity, AND SAM           ]
MAIRS, in his individual capacity      ]
                                       ]
          Defendants.                  ]

## COST BOND

I hereby acknowledge and bind myself for the prosecution of this action and payment of all costs in this court which may at any time be adjudged against the plaintiff in the event said plaintiff shall not pay the same.

Witness my hand this 1st day of September, 2015.

Respectfully submitted,

**JAMES, JAMES & JOYNER**

STUART F. JAMES, BPR# 013841
WILLIAM T. "BILLY" JOYNER, BPR# 033378
Attorneys - Plaintiff
735 Broad Street, Suite 908
Chattanooga, TN 37402
(423) 756-3646
sj@jamesjamesjoyner.com
wtj@jamesjamesjoyner.com

# State of Tennessee
## In the Circuit Court for Hamilton County

FILED IN OFFICE
2015 OCT -9 PM 3: 08
LARRY L. HENRY, CLERK
BY _____ DC

ELIZABETH GENTZLER,  ]
    Plaintiff,  ]
      ]
vs.  ]   Docket No: 15-C-1031
      ]
HAMILTON COUNTY,  ]
JUDGE ROB PHILYAW in his  ]
individual capacity, AND SAM  ]
MAIRS, in his individual capacity  ]
    Defendants.  ]

## 2nd SUMMONS

**TO:** **HAMILTON COUNTY, JUDGE ROB PHILYAW in his individual capacity, AND SAM MAIRS, in his individual capacity:**

c/o Hamilton County Attorney Rheubin Taylor - 204 Courthouse, 625 Georgia Avenue, Chattanooga, TN 37402

  **Defendant**                **Address**

    You are hereby summoned to answer and make defense to a bill of complaint which has been filed in the Circuit Court for Hamilton County, Tennessee in the above styled case. Your defense to this complaint must be filed in the office of the Circuit Court Clerk for Hamilton County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

    WITNESSED and Issued this ___9th___ day of ___October___, 2015.

                        **LARRY L. HENRY, Clerk**

           By: __J. Wheeler, D.C.__
                       **D.C.**

**Attorneys for Plaintiff** ~~JAMES, JAMES & JOYNER~~

            735 Broad Street, Ste. 908, Chattanooga, TN 37402
                      **Address**

**Plaintiff's Address**   c/o JAMES, JAMES & JOYNER

  **Received this _____ day of _____, 2015.**

                      /s/ _____
                          **Deputy Sheriff**

2015 OCT 12 AM 11 55

## COST BOND

    I hereby acknowledge and bind myself for the prosecution of this action and payment of all costs in this court which may at any time be adjudged against the plaintiff in the event said plaintiff shall not pay the same. Witness my hand this 8th day of October, 2015.

               STUART F. JAMES BPR#013841
                     **Surety**
               JAMES, JAMES & JOYNER

               735 Broad St., Ste. 908, Chattanooga, TN 37402
                     **Address**

**Collective Exhibit A**
**Page 47 of 52**

# State of Tennessee,
## County of Hamilton

I, Larry L. Henry, Clerk, in and for the State and County Aforesaid, hereby certify that the within and foregoing is a true and correct copy of the original writ of summons issued in this case.

Larry L. Henry, Clerk

By: _____ D.C.

## OFFICER'S RETURN

I hereby certify that I served this summons together with the complaint as follows:

[×] On, _10/13/15_____, 2015, I delivered a copy of the summons and complaint to the defendant, _Judge Rob Philyaw c/o County Attorney Rheuban Taylor_

[ ] Failed to serve this summons within 30 days after its issuance because:

_____

SHERIFF

_D. Rankin 2413_
**Deputy Sheriff**

## CLERK'S RETURN

I hereby acknowledge and accept service of the within summons and receive copy of same, this _____

day of _____, 2015.

_____
**Defendant**

Larry L. Henry, Clerk

By: _____ D.C.

FILED IN OFFICE
2015 OCT 14 PM 12: 34
LARRY L. HENRY, CLERK
BY ___ DC

### NOTICE TO DEFENDANT(S)

Tennessee law provides a four thousand dollar ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued in the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

# State of Tennessee
## In the Circuit Court for Hamilton County

FILED IN OFFICE
2015 OCT -9 PM 3: 10
LARRY L. HENRY, CLERK
BY_____DC

ELIZABETH GENTZLER,
    Plaintiff,

vs.                     Docket No: 15-C-1031

HAMILTON COUNTY,
JUDGE ROB PHILYAW in his
individual capacity, AND SAM
MAIRS, in his individual capacity
    Defendants.

## 2nd SUMMONS

TO: **HAMILTON COUNTY, JUDGE ROB PHILYAW in his individual capacity, AND SAM MAIRS, in his individual capacity:**
c/o Hamilton County Attorney Rheubin Taylor - 204 Courthouse, 625 Georgia Avenue, Chattanooga, TN 37402
Defendant                Address

You are hereby summoned to answer and make defense to a bill of complaint which has been filed in the Circuit Court for Hamilton County, Tennessee in the above styled case. Your defense to this complaint must be filed in the office of the Circuit Court Clerk for Hamilton County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

WITNESSED and Issued this ___9th___ day of ___October___, 2015.

LARRY L. HENRY, Clerk

By: _J. Wheeler, D.C_
                D.C.

Attorneys for Plaintiff    JAMES, JAMES & JOYNER

                735 Broad Street, Ste. 908, Chattanooga, TN 37402
                            Address

Plaintiff's Address    c/o JAMES, JAMES & JOYNER

Received this _____ day of _____, 2015.

/s/_____
                      Deputy Sheriff

## COST BOND

I hereby acknowledge and bind myself for the prosecution of this action and payment of all costs in this court which may at any time be adjudged against the plaintiff in the event said plaintiff shall not pay the same.

Witness my hand this 8th day of October, 2015.

                STUART F. JAMES BPR#013841
                          Surety
                JAMES, JAMES & JOYNER

                735 Broad St., Ste. 908, Chattanooga, TN 37402
                            Address

2015 OCT 12 AM 11:55

**Collective Exhibit A**
**Page 49 of 52**

# State of Tennessee,
## County of Hamilton

I, Larry L. Henry, Clerk, in and for the State and County Aforesaid, hereby certify that the within and foregoing is a true and correct copy of the original writ of summons issued in this case.

Larry L. Henry, Clerk

By: _____ D.C.

## OFFICER'S RETURN

I hereby certify that I served this summons together with the complaint as follows:

[X] On, _10/13/15_____, 2015, I delivered a copy of the summons and complaint to the defendant, _SAM MAIRS C/O COUNTY ATTORNEY RHEUBAN TAYLOR_____

[ ] Failed to serve this summons within 30 days after its issuance because:

SHERIFF

_D. Randle 2413_
Deputy Sheriff

## CLERK'S RETURN

I hereby acknowledge and accept service of the within summons and receive copy of same, this

day of _____, 2015.

_____
Defendant

Larry L. Henry, Clerk

By: _____ D.C.

FILED IN OFFICE
2015 OCT 14 PM 12: 34
LARRY L. HENRY, CLERK
BY _____ D.C.

## NOTICE TO DEFENDANT(S)

Tennessee law provides a four thousand dollar ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued in the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

# State of Tennessee
## In the Circuit Court for Hamilton County

FILED IN OFFICE
2015 OCT -9 PM 3: 09
LARRY L. HENRY, CLERK
BY _JH_ DC

ELIZABETH GENTZLER,
    Plaintiff,

vs.

Docket No: 15-C-1031

HAMILTON COUNTY,
JUDGE ROB PHILYAW in his
individual capacity, AND SAM
MAIRS, in his individual capacity
    Defendants.

2nd

## SUMMONS

**TO:** **HAMILTON COUNTY, JUDGE ROB PHILYAW in his individual capacity, AND SAM MAIRS, in his individual capacity:**
c/o Hamilton County Attorney Rheubin Taylor - 204 Courthouse, 625 Georgia Avenue, Chattanooga, TN 37402

    Defendant                 Address

    You are hereby summoned to answer and make defense to a bill of complaint which has been filed in the Circuit Court for Hamilton County, Tennessee in the above styled case. Your defense to this complaint must be filed in the office of the Circuit Court Clerk for Hamilton County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

WITNESSED and Issued this ___9th___ day of ___October___, 2015.

                        **LARRY L. HENRY, Clerk**

              By: _J. wheeler, DC_
                      D.C.

**Attorneys for Plaintiff**    JAMES, JAMES & JOYNER

                       735 Broad Street, Ste. 908, Chattanooga, TN 37402
                                  Address

**Plaintiff's Address**    c/o JAMES, JAMES & JOYNER

    **Received this** _____ day of _____, 2015.

                         /s/_____
                           **Deputy Sheriff**

## COST BOND

I hereby acknowledge and bind myself for the prosecution of this action and payment of all costs in this court which may at any time be adjudged against the plaintiff in the event said plaintiff shall not pay the same. Witness my hand this 8th day of October, 2015.

_2015 OCT 12 AM 11: 55_

                        STUART F. JAMES BPR#013841
                                Surety
                        JAMES, JAMES & JOYNER

                        735 Broad St., Ste. 908, Chattanooga, TN 37402
                                    Address

**Collective Exhibit A**
**Page 51 of 52**

# State of Tennessee,
## County of Hamilton

I, Larry L. Henry, Clerk, in and for the State and County Aforesaid, hereby certify that the within and foregoing is a true and correct copy of the original writ of summons issued in this case.

Larry L. Henry, Clerk

By: _____ D.C.

---

## OFFICER'S RETURN

I hereby certify that I served this summons together with the complaint as follows:

[X] On, _10/13/15_, 2015, I delivered a copy of the summons and complaint to the defendant, _HAMILTON COUNTY C/O COUNTY ATTORNEY RHEUBAN TAYLOR_

[ ] Failed to serve this summons within 30 days after its issuance because: _____

SHERIFF

_D. Rachels_ 2413

Deputy Sheriff

---

## CLERK'S RETURN

I hereby acknowledge and accept service of the within summons and receive copy of same, this _____ day of _____, 2015.

Defendant

Larry L. Henry, Clerk

By: _____ D.C.

---

### NOTICE TO DEFENDANT(S)

Tennessee law provides a four thousand dollar ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued in the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

**Collective Exhibit A**
**Page 52 of 52**